FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 OCT -3  AM 10: 39

CLERK _J.Button_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

CHARLES HARPER,                          )
                                         )
            Plaintiff,                   )
                                         )
    v.                                   )        CV 105-022
                                         )
BILLY NICHOLS,                           )
                                         )
            Defendant.                   )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff Charles Harper, an inmate incarcerated at Washington State Prison in

Davisboro, Georgia, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Now before

the Court is Defendant's motion for summary judgment. (Doc. no. 92). Despite being

granted three extensions of time, Plaintiff did not file a response to the motion. (See doc.

nos. 116, 134). One of these extensions was an order directing Plaintiff to submit a response

to the summary judgment motion and advising him of the consequences of his failure to

respond. (Doc. no. 134). However, Plaintiff still did not file a response. Accordingly, the

motion is deemed to be unopposed. Loc. R. 7.5. For the reasons that follow, the Court

**REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment be

**GRANTED**, that judgment be **ENTERED** in favor of Defendant, and that this civil action

be **CLOSED**.

## I.    BACKGROUND

Because Plaintiff has not responded to Defendant's motion for summary judgment or the statement of facts contained therein, the Court accepts Defendant's factual allegations as true. See Fed. R. Civ. P. 56. In his amended complaint, Plaintiff avers that Defendant was deliberately indifferent to his serious medical needs regarding his gastrointestinal ("GI") complaints while incarcerated at the Augusta State Medical Prison ("ASMP"). (Doc. no. 6, ¶¶ 12-15, 56). Specifically, Plaintiff claims that despite the recommendations of various specialists, Defendant refused to provide necessary medical treatment for his GI problem and instead labeled Plaintiff as a schizophrenic in order to "get him involved in homosexual activity" and play "psychological war games." (Id. at ¶¶ 1, 3, 7, 12-14, 30-35, 39-47, 54-55). Further, Plaintiff argues that Defendant deliberately withheld his "correct" medical records and submitted false records to the medical records clerk. (Id. at ¶¶ 13-15, 18, 57-63, 68).[1] Thereafter, Defendant answered, denying all liability, and also submitted the instant motion for summary judgment. (Doc. nos. 43, 92).

In his motion, Defendant maintains that although Plaintiff suffers from serious medical conditions, namely hypertension and gastro-paresis, there is no evidence that he acted with wanton disregard of Plaintiff's conditions, and that the care given to Plaintiff met the minimum standards in the medical community. (Doc. no. 93, pp. 13-15). With his motion, Defendant also provided an affidavit and Plaintiff's medical records outlining the following information. Between May 14, 2003 and November 8, 2005, Plaintiff was seen

---

[1] It should be noted that this lawsuit only deals with Plaintiff's medical care and treatment after May 13, 2003; his care and treatment prior to this date were previously litigated in Harper v. Walker, et al., 5:03-cv-7-3 (M.D. Ga. Jan. 8, 2003).

by 8 different doctors on no less than 26 separate occasions regarding his hypertension and GI complaints. (Doc. no. 94, Med. R., pp. 42, 44-45, 47, 49-50, 53-54, 62-63, 67, 79, 140, 224-25, 227-28, 231-32, 250, 252, 304, 443, 445, 447, 474). During these visits, Plaintiff received medication; a colonoscopy with polypectomy; an endoscopic examination of his esophagus, stomach, and upper duodenum; a stress test; a Gastric Emptying Study; a CT scan; and a referral to a vascular surgeon. (Id.). As a result of his tests, Plaintiff was diagnosed with gastro-paresis, a condition where the emptying of the stomach is delayed. (Id. at Nichols Aff., ¶ 24; Med. R., pp. 79, 140).

Defendant first saw Plaintiff on October 10, 2005, when Plaintiff complained of severe headaches and stomach pain, although Plaintiff stated that the stomach pain was relieved when he released gas. (Id. at Med. R., p. 41). Defendant states in his affidavit that his examination revealed no local findings. (Id. at Aff., ¶ 32). As such, Defendant told Plaintiff to monitor and track his headaches and scheduled Plaintiff for a follow-up visit. (Id. at Med. R., p. 41).

On October 19, 2005, Defendant saw Plaintiff for his annual physical examination. During the examination, Defendant reviewed Plaintiff's most recent laboratory results and discussed the results with him. (Id. at Aff., ¶ 33; Med. R., pp. 17, 32). Plaintiff's diagnosis remained hypertension, a history of schizophrenia, GERD with esophageal spasm, and microcytosis, and Defendant determined that no changes in medications were necessary. (Id.). Defendant thereafter advised Plaintiff of the results of his physical examination and the need for an "HG Electrophorsis test" two weeks later. (Id.).

3

Despite being given a chance to submit a response to Defendant's motion for summary judgment, that included three extensions of time, and being warned that not submitting a response would result in an admission of Defendant's factual allegations, Plaintiff failed to file a response to Defendant's motion. The only evidence that Plaintiff has supporting his claim is his deposition, which was taken by Defendant in order to give Plaintiff the chance to outline what evidence he had to support his claims. (Doc. no. 94, Dep.). In his deposition, Plaintiff claimed that (1) the paperwork that Defendant filed in the Middle District of Georgia in his 2003 case and (2) Plaintiff's "sick call slip" would support his allegations. (Id. at 5-6). However, Plaintiff failed to submit these documents to this Court for review. Additionally, Plaintiff also admitted in his deposition that he did not know of anyone with medical training who could support his claim. (Id. at 8, 10).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving

party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party meets its burden, the non-moving party must then "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## III.   ANALYSIS

In his complaint, Plaintiff claims that Defendant was deliberately indifferent to his medical needs, namely his GI problems.  The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment on prisoners.  Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999).  Because a prisoner is unable to care for his medical needs as a result of his incarceration, the Eighth Amendment requires prison authorities to provide medical care for those they incarcerate.  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  Based on this rudimentary principle, the Supreme Court concluded that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Id. at 105.

In order to succeed in a medical indifference claim, a plaintiff must satisfy both an objective and a subjective component.  Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).  To satisfy the objective component, a plaintiff must show that his medical need is serious, or that the need "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the need for a doctor's attention." Id. at 1187.  For the subjective component, a plaintiff must show that the defendant possessed "knowledge of the need for medical care" and displayed "the intentional refusal to provide that care." Id. at 1186.

Additionally, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)).  Neither does a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment support a

6

claim of cruel and unusual punishment. <u>Harris</u>, 941 F.2d at 1505; <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 1989).  That is, the burden of proving deliberate indifference cannot be met simply by arguing that an inmate wanted a different type of treatment.  <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . ." <u>Id.</u> (citation omitted)).

In the instant case, although Plaintiff has satisfied the objective standard by demonstrating that his gastro-paresis requires medical attention, a fact admitted by Defendant, Plaintiff has not met the subjective component of the deliberate indifference standard.  Of the two times that Defendant saw Plaintiff, Defendant (1) did not refuse to treat Plaintiff, (2) examined Plaintiff and explained his findings, if any, and (3) continued Plaintiff's treatment based on Plaintiff's prior medical history.

Further, of the 26 additional medical visits that Plaintiff made for his GI and hypertension conditions, there is nothing in the record indicating that Plaintiff was ever refused treatment or suggesting that any of Plaintiff's doctors were deliberately indifferent to his medical needs such that Defendant's course of treatment should have varied from that of the other doctors who had treated Plaintiff.  Moreover, the record reflects that Plaintiff received medication; a colonoscopy with polypectomy; an endoscopic examination of his esophagus, stomach, and upper duodenum; a stress test; a Gastric Emptying Study; and a CT scan in order to diagnose and treat his GI problems.  Therefore, the evidence in the record does not support Plaintiff's claim that Defendant was deliberately indifferent to his medical

7

needs. See Hill, 40 F.3d at 1186-87; Harris, 941 F.2d at 1505, 1510;  Hamm, 774 F.2d at 1575.

Additionally, to the extent that Plaintiff avers that Defendant deliberately withheld his "correct" medical records and submitted false records to the medical records clerk, this argument does not change the fact that Plaintiff's deliberate indifference claim is meritless. The only medical records filed with the Court were those submitted by Defendant, which were accompanied by a notarized statement of authenticity of inmate medical records. (Doc. no. 94, Med. R.).  Further, there is no evidence in the record to indicate that these medical records are not authentic and Plaintiff's "correct" medical records.  Accordingly, the record demonstrates that Defendant relied on the "correct" medical records when he diagnosed and treated Plaintiff.  Therefore, Plaintiff's deliberate indifference claim is without merit.

## IV.    CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**, that judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 3nd day of October, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE